271 P.3d 1124 (2011)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of S.X.M., a Child, and
Concerning T.M., Respondent-Appellant.
No. 11CA0398.
Colorado Court of Appeals, Div. II.
September 15, 2011.
Rehearing Denied November 3, 2011.
*1125 George H. Hass, County Attorney, Jennifer A. Stewart, Assistant County Attorney, Fort Collins, Colorado, for Petitioner-Appellee.
Nancy J. Walker-Johnson, Guardian Ad Litem.
The Life & Liberty Law Office, Sarah Schielke, Fort Collins, Colorado, for Respondent-Appellant.
Opinion by Judge DAILEY.
In this dependency and neglect proceeding, T.M. (father) appeals from the order adjudicating S.X.M. (child) as a dependent and neglected child. Father contends that *1126 the jury's findings do not support the adjudication and that the trial court deprived him of fundamental fairness by permitting the child to testify at trial via closed-circuit television. We disagree with each of his contentions and therefore affirm.

I. Background
In June 2010, S.X.M., then six years old, was removed from father's care after the Larimer County Department of Human Services (LCDHS) received a report that the child had disclosed that father had had sex with her and that other "inappropriate sexual actions" had taken place between father and the child.
A jury trial to determine whether the child was dependent and neglected was scheduled for February 2011.
Prior to the trial, LCDHS filed a motion in limine requesting that the child be permitted to testify in front of the jury but not in the presence of father. As grounds for this request, LCDHS argued that (1) allowing father to be in the courtroom while the child was present would be a violation of the no-contact order which required father to stay at least 500 feet away from the child, and (2) if the child were to see father in the courtroom, she might be too intimidated and traumatized to testify. Father opposed the motion, arguing that he had a right to confront the witnesses against him and that LCDHS had not provided any factual support for its argument that he should be excluded from the child's presence.
The trial court granted LCDHS's motion, citing testimony that the child exhibited "anxiety and avoidance" when the topic of father arose in therapy, and the representation of the child's guardian ad litem (the GAL) that it was in the child's best interests that she not be required to testify in front of father. However, the court ordered that father should have the opportunity to view the child's testimony via closed-circuit television, and that during the testimony he should have real-time communication with his attorney via cell phone. The court concluded that this procedure would "appropriately balance[] his need for effective cross-examination while protecting the child from undue emotional harm."
LCDHS also filed a position statement regarding the jury instructions to be given at trial. Among other things, LCDHS proposed to use the past tense in the two questions to be submitted to the jury:
1. Did the child lack proper parental care through the actions of her father?
2. Was [the child's] environment injurious to her welfare?
LCDHS argued that the past tense was appropriate because the allegations concerning the child's care and environment were intended to refer to the time of the filing of the petition in dependency and neglect. In response, father argued that the present tense should be used because the purpose of a dependency and neglect proceeding is "to address whether [a] parent can properly care for their child, not whether one single act occurred in the past." Father noted that section 19-3-102(1)(b) and (c), C.R.S.2010, use the present tense in providing that a child is neglected or dependent if "[t]he child lacks proper parental care through the actions or omissions of the parent" or "[t] he child's environment is injurious to ... her welfare." He contended that the use of the past tense would confuse the jury.
The present or past tense issue was raised again during the jury instruction conference at the conclusion of the trial. Father pointed out that an adjudication of neglect or dependency relates to the status of the child, not the parent. He contended that it would be prejudicial to him to ask the jury to "look backwards alone." The GAL argued that use of the present tense would confuse the jury, because it would encourage the jury to consider whether the child was in an unsafe environment while in foster care, rather than while in father's care.
The court concluded that in a case where the child had been removed from the parent's care, using the past tense would be less confusing than using the present tense. Accordingly, the jury was instructed in Jury Instruction 13 to consider whether the child "lacked" proper parental care through the actions or omissions of father, and whether *1127 her environment "was" injurious to her welfare.
The special verdict form was similarly worded.
The child testified according to the procedure established by the court. The jury answered "yes" to both of the questions asked of it, and the child was adjudicated dependent and neglected.

II. Confrontation and Due Process
Father contends that he had a right to confront the child in the courtroom, and by allowing the child to testify at trial via closed-circuit television, the court denied that right and also denied him the fundamental fairness required by the Due Process Clause of the Fourteenth Amendment. We do not agree.
Citing Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), father argues that he had a right to confront the child, and this right should not have been denied in the absence of evidence that the child would be traumatized if required to testify in his presence. Father acknowledges that Craig is a criminal case, and no Colorado case supports the proposition that a party to a noncriminal case has a right to confront an accuser face-to-face. However, he notes that a parent has a right to "fundamentally fair procedures" in a dependency and neglect proceeding, and he argues that in view of the importance of a parent's fundamental liberty interest in the care, custody, and control of his child, his right to "fundamental fairness" includes the right to confront his accuser in court in a dependency and neglect proceeding, even when his accuser is his own child.
To the extent that father argues that the Sixth Amendment right of confrontation should be extended to a parent involved in a dependency and neglect proceeding, we note that this argument has been rejected in Colorado. In People in Interest of C.G., 885 P.2d 355, 357 (Colo.App.1994), another division of this court held that "[a]n action for termination of the parent-child legal relationship is a civil action; therefore, neither due process nor other constitutional guarantees confer a right of confrontation on a respondent or require his presence at a termination hearing." Id.; see also People in Interest of V.M.R., 768 P.2d 1268, 1270 (Colo.App.1989) (Sixth Amendment right to confrontation applies to criminal cases; there is no similar right in a civil trial).
To the extent that father nonetheless contends that fundamental fairness required that he be allowed to confront the child in court, even if he did not have a right to do so under the Sixth Amendment, we reject his argument. Father has cited no Colorado authority for the proposition that due process requires the extension of the right of confrontation to civil litigants. Moreover, we note that even in a criminal case, the right to confront an adverse witness is not unlimited. See, e.g., § 16-10-402(1)(a), C.R.S.2010 (providing that, when a witness at the time of trial is a child less than twelve years old, and the judge determines that testimony by the witness in the courtroom in the presence of the defendant "would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate," the witness may testify, out of the defendant's physical presence, via closed-circuit television); § 18-3-413(1), (4), C.R.S.2010 (providing that, when the victim of a sexual offense is a child less than fifteen years of age, a videotape deposition may be taken of the victim's testimony and such deposition may be admitted into evidence at trial if the court finds that "further testimony would cause the victim emotional trauma so that the victim is medically unavailable or otherwise unavailable [under CRE] 804(a)").
Crediting the testimony of the child's therapist and the recommendation of the GAL, the trial court determined that the child would suffer "serious emotional harm or trauma" if forced to testify in front of father. The court concluded that the use of closed-circuit television would "appropriately balance [father's] need for effective cross-examination while protecting the child from undue emotional harm." Accordingly, the court ordered that the child should testify in another room, while father remained in the courtroom. Father was to have "real-time communication" with his attorney via cell phone during the child's testimony. We conclude *1128 that even if father could claim a right to confront the child, the procedure adopted by the court was fundamentally fair and did not deprive him of due process. Cf. People v. Mosley, 167 P.3d 157, 161 (Colo.App.2007) (recognizing that closed-circuit television procedure for taking testimony of traumatized children was "consistent with a defendant's right [in a criminal case] to face-to-face confrontation of adverse witnesses").

III. Inconsistency of the Findings with the Dependency and Neglect Statute
Father contends that the trial court lacked jurisdiction to adjudicate the child dependent and neglected because the jury did not make any of the specific findings required to support an adjudication under section 19-3-102, C.R.S.2010. He argues that because the use of the past tense in Jury Instruction 13 and the special verdict form focused the jury's attention on the child's status at "some moment in the past when some abuse was alleged to have occurred," rather than on the child's status at the time of the hearing, the jury's findings are not in compliance with section 19-3-102, and thus, do not support the trial court's adjudication of the child as dependent and neglected. He argues also that the use of the past tense was prejudicial to him because a finding that the child had suffered any injury in the past virtually compelled a finding that the child was in an injurious environment, and because the lack of "proper findings" as to the child's true status provided no meaningful guidance for the formulation of a treatment plan. We are not persuaded by father's arguments.

A. Applicable Law
In Colorado, the filing of a petition in dependency and neglect and the subsequent adjudication of the subject child as dependent or neglected serve the purpose of "provid[ing] the jurisdictional bases for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family unit." People in Interest of A.M.D., 648 P.2d 625, 640 (Colo.1982).
A child may be deemed neglected or dependent if:
(a) A parent, guardian, or legal custodian has abandoned the child or has subjected him or her to mistreatment or abuse or a parent, guardian, or legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring;
(b) The child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;
(c) The child's environment is injurious to his or her welfare;
(d) A parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being;
(e) The child is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian;
(f) The child has run away from home or is otherwise beyond the control of his or her parent, guardian, or legal custodian;
(g) The child tests positive at birth for either a schedule I controlled substance, as defined in section 18-18-203, C.R.S., or a schedule II controlled substance, as defined in section 18-18-204, C.R.S., unless the child tests positive for a scheduled II controlled substance as a result of the mother's lawful intake of such substance as prescribed.
§ 19-3-102(1), C.R.S.2010.
When filing a petition in dependency and neglect, the state must set forth one or more of the statutory bases for adjudicating the child dependent or neglected. The filing of the petition provides a jurisdictional foundation for the court to issue temporary orders providing for "legal custody, protection, support, medical evaluation or medical treatment, surgical treatment, psychological evaluation or psychological treatment, or dental treatment as it deems in the best interest of any child concerning whom a petition has *1129 been filed prior to adjudication or disposition of his case." § 19-1-104(3)(a), C.R.S.2010; see A.M.D., 648 P.2d at 639.
If a parent does not admit the allegations set forth in the petition, the court must conduct an adjudicatory hearing to determine whether the allegations are supported by a preponderance of the evidence. § 19-3-505(1), C.R.S.2010. An adjudicatory hearing is designed to determine whether the child lacks the benefit of adequate parental protection, care, and guidance. People in Interest of O.E.P., 654 P.2d 312, 318 (Colo.1982).
A trial court has a duty to correctly instruct the jury on the law applicable to the case, but, as long as this obligation is met, the court has broad discretion over the form and style of the instructions. Krueger v. Ary, 205 P.3d 1150, 1157 (Colo.2009).
We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. Fishman v. Kotts, 179 P.3d 232, 235 (Colo.App.2007). An instruction which misleads or confuses the jury amounts to error, but such error is not a ground for reversal unless it prejudices a party's substantial rights. Hock v. New York Life Ins. Co., 876 P.2d 1242, 1258 (Colo. 1994).
A trial court's decision to give a particular instruction, or to reject a party's tendered instruction, is reviewed for an abuse of discretion. Fishman, 179 P.3d at 234-35. A court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair. Kinney v. People, 187 P.3d 548, 558 (Colo.2008).

B. Compliance with Section 19-3-102
Father argues that the jury instructions given by the trial court encouraged the jury to make findings that do not support an adjudication that the child was "dependent and neglected" at the time of the hearing, and thus, do not support the court's continuing jurisdiction over this case. We construe this as an argument that
 the jury instruction that asked the jury to determine whether the child "lack[ed]" proper parental care and whether her environment "was" injurious did not accurately inform the jury of the governing law, which provides that a child is neglected or dependent if she "lacks" proper parental care or if her environment "is" injurious to her welfare, and
 because the jury's findings that the child "lack[ed]" proper parental care and that her environment "was" injurious to her welfare are not among the findings that will support an adjudication that the child is neglected or dependent under section 19-3-102, and no other basis for so adjudicating was established, the adjudication of the child as neglected or dependent cannot stand, and thus, the trial court lacked continuing jurisdiction over the case and the case should have been dismissed as required by section 19-3-505(6), C.R.S.2010.
We are not persuaded that the jury instructions, considered as a whole, misled the jury. We are also not persuaded that, because they were stated in the past tense rather than the present tense, the jury's findings were insufficient to support an adjudication that the child was neglected or dependent as defined in section 19-3-102(1)(b) and (c), and thus, insufficient to support the court's ongoing jurisdiction.[1]
*1130 In interpreting a statute, we must strive to give effect to the legislative intent, looking to the language of the statute and giving words their plain and ordinary meaning. C.S. v. People in Interest of I.S., 83 P.3d 627, 634-35 (Colo.2004). If the statutory language is clear and the intent appears with reasonable certainty, we need not resort to other rules of statutory construction. Catholic Charities in Interest of C.C.G., 942 P.2d 1380, 1383 (Colo.App.1997). However, we must also apply the general rule that provisions of the Children's Code should be liberally construed to serve the welfare of children and the best interests of society. People v. Dist. Court, 731 P.2d 652, 654 (Colo.1987) (citing section 19-1-102(2), C.R.S. 2010). Thus, we should avoid any technical reading of the statute that would disregard the best interests of the child. C.S., 83 P.3d at 635.
We begin our analysis with the language of the statute. Subsections (1)(b) and (c) of section 19-3-102 employ the present tense: a child is deemed neglected or dependent if he or she "lacks" proper parental care or if his or her environment "is" injurious to his or her welfare. The plain language of section 19-3-102(1)(b) and (c) suggests that the child's status as a neglected or dependent child is to be determined at the time of the adjudication hearing. But, as the trial court observed, the use of the present tense in jury instructions concerning parental care and the child's environment could cause "massive confusion" if, at the time of the hearing, the jury was informed that the child has been removed from harm and is doing well in foster care. In this situation, construing words in the present tense to mean "at the time of the hearing only" could result in a finding that the child is not neglected or dependentand thus, must be returned to his or her parent's caredespite evidence showing that he or she was neglected or abused while in her parent's care, and likely will be neglected or abused if returned to his or her parent's care. Such a construction disregards the best interests of the child and is not consistent with the beneficent purposes of the Children's Code.
Another rule of statutory construction provides that "[w]ords in the present tense include the future tense." Section 2-4-104, C.R.S.2010. Applying this rule in People in Interest of D.L.R., 638 P.2d 39, 42 (Colo. 1981), the Colorado Supreme Court determined that statutory language providing that a neglected or dependent child may be defined as a child "who lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian" must be interpreted to read "who lacks or will lack proper parental care." (Emphasis added.) Applying the rule here, we conclude that section 19-3-102(1)(b) and (c) must be interpreted to read that a child is neglected or dependent if the child "lacks or will lack" proper parental care or if her environment "is or will be" injurious to her welfare.
Having concluded that the language of section 19-3-102(1)(b) and (c) should be interpreted to include both the present and the future tense, we must now address the issue with which the court and the parties struggled: how to communicate to the jury, as clearly as possible, that in deciding whether a child who is no longer in his or her parent's care "lacks" proper parental care and whether his or her environment "is" injurious to him or her, the jury's task is not to determine whether the child is presently receiving proper care or whether his or her environment is presently injurious. Rather, the task is to determine whether the child "will lack" proper parental care if returned to his or her parent, and whether his or her environment "will be" injurious to him or her in that event, based on evidence intended to show whether the child "lacked" proper parental care and "was" in an injurious environment while in his or her parent's care. Father maintained then, as he does now, that any concerns the court had about confusion resulting from the use of the present tense in the jury instructions might better have been resolved by giving the instructions using the present tense, and supplementing those instructions with an additional instruction stating that if the jury found that the child's environment had been injurious in the past because of sexual abuse, it could also find that her environment was injurious in the *1131 present. The court ultimately chose to give the instructions in the past tense.
We are persuaded that any temporal confusion caused by asking the jury to determine the child's status after she was removed from father's care could have been addressed simply and effectively by
(1) using instructions and verdict forms stated in the present tense (as found in section 19-3-102 and in the pattern jury instructions), and
(2) adding an instruction stating that the present tense should be construed to include the future tense (that is, that the child could be adjudicated dependent and neglected if the jury found that she "would lack proper parental care" or that her environment "would be injurious" if returned to father's care in the future) and that the jury could make such "present tense" findings based on evidence that the child had been subjected to abuse in the past, when she was in father's care.
Nevertheless, we conclude that the jury instructions given here, considered as a whole, were not misleading, and that the court did not abuse its discretion in adopting the instructions proposed by LCDHS rather than those proposed by father.
By using the past tense, Jury Instruction 13 directed the jury to consider whether the child lacked proper parental care and was subjected to an injurious environment while in father's care. Although section 19-3-102 does not address the question of proof, Colorado courts have repeatedly held that a child may be adjudicated neglected or dependent based on past harm as well as current or future harm. See, e.g., People in Interest of S.G.L., 214 P.3d 580, 583 (Colo.App.2009) (an adjudication may be based on evidence of "current or past harm [and] also on prospective harm"); see also § 19-3-505(7)(a), C.R.S.2010 ("Evidence that child abuse or nonaccidental injury has occurred shall constitute prima facie evidence that such child is neglected or dependent, and such evidence shall be sufficient to support an adjudication under this section.") (emphasis added). We conclude that when a child has been removed from his or her parent's care, instructing the jury to consider whether the child lacked proper parental care or was subjected to an injurious environment while in the parent's care is not, in and of itself, misleading or erroneous.
To the extent that father contends that giving Jury Instruction 13 in the past tense preempted the jury from making findings concerning the child's present status, we disagree. We are satisfied that any possible confusion as to whether the child should be deemed neglected or dependent based solely upon past harm without any threat of ongoing harm was addressed in Jury Instructions 14 and 15, which defined "proper parental care" and "injurious environment" using the present tense, and in Jury Instruction 16, which explained that in determining whether a child is dependent or neglected, future harm may be considered.
In reaching this conclusion, we reject father's contention that he was prejudiced because the jury was "compelled" by the instructions to find that the child lacked proper parental care and that her environment was injurious upon any showing of past injury or abuse. The jury was not told, either directly or by implication, that the child must be deemed neglected or dependent if she suffered any past injury or abuse, regardless of who was responsible or whether it was likely to be repeated. Jury Instruction 14 informed the jury:
Proper parental care means the minimum level of care or services and necessities which are required to prevent any serious threat to the child's health or welfare.
Jury Instruction 15 explained:
A child's environment is injurious to her welfare when all of the following exist:
(1) The environment has been causing injuries to the welfare of the child;
(2) The environment is under the control of, or is subject to change by, the child's parent; and
(3) The environment is sufficiently injurious to the child's welfare that any reasonable parent would act to change it.
By giving Jury Instructions 14 and 15, the court explained to the jury that evidence of past injury or abuse was relevant only to the *1132 extent that it showed that father had not taken the steps needed to protect the child from any serious threat to her health or welfare or that he had allowed her to be placed in an injurious environment despite having the ability to change it.
As long as the instructions given by the trial court did not mislead or confuse the jury as to the governing lawand we have concluded that the instructions given here did notit was within the court's discretion to give the instructions proposed by LCDHS rather than those proposed by father. To say that a court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other. Colorado Nat'l Bank v. Friedman, 846 P.2d 159, 166 (Colo.1993). We may not find an abuse of discretion simply because, faced with the same choice, we might have chosen a different course of action. See Kinney, 187 P.3d at 558 (an abuse of discretion may be found only when the court's ruling is manifestly arbitrary, unreasonable, or unfair). Because we are not persuaded that the court's decision to give the jury instructions proposed by LCDHS rather than those proposed by father was arbitrary, unreasonable, or unfair, we perceive no abuse of the court's discretion in making that choice.
Having concluded that the instructions given by the court did not mislead the jury as to the governing law, we conclude also that the jury's findings were sufficient to support the adjudication of the child as neglected or dependent as defined under section 19-3-102(1)(b) and (c), notwithstanding the fact that the jury's findings were stated in the past tense rather than in the present tense. To conclude otherwise would require us to apply section 19-3-102 in a manner that disregards the best interests of the child and the beneficent purposes of the Children's Code, which we decline to do.

C. Formulation of an Appropriate Treatment Plan
Father contends that by approving the jury instructions and special verdict form using the past tense, as recommended by LCDHS, the court allowed the jury to make findings that offered the court no "meaningful direction" for the formulation of a treatment plan for him. We construe this as a contention that some or all of the elements of the treatment plan adopted by the court following the March 2, 2011, dispositional hearing were not supported by evidence showing that such elements were needed to address the problems that led to the child's adjudication as a dependent or neglected child.
We need not, however, address this issue because father has not appealed from the dispositional order. See People in Interest of C.L.S., 934 P.2d 851, 854 (Colo.App.1996) (following an adjudication of dependency and neglect, the initial dispositional order adopting a treatment plan constitutes a "decree of disposition" and renders the adjudication and the initial dispositional order final for purposes of appeal); see also C.A.R. 3.4(b)(1) (notice of appeal must be filed within twenty-one days after the entry of the order from which the appeal is taken).
The order adjudicating the child as dependent and neglected is affirmed.
WEBB and STERNBERG[*], JJ., concur.
NOTES
[1] Even if we were persuaded that the jury had been misled by the instructions, and that findings made in the past tense could not comply with section 19-3-102(1)(b) and (c), we would nonetheless not require dismissal of the case. An instructional error does not deprive a court of jurisdiction; at worst, it requires reversal and remand for a new trial. See generally In re Hatcher, 443 Mich. 426, 505 N.W.2d 834, 840 (1993) (distinguishing between "whether the court has subject matter jurisdiction and whether the court properly exercised its discretion in applying that jurisdiction"); see also People v. Smith, 32 Cal.4th 792, 11 Cal.Rptr.3d 290, 86 P.3d 348, 353 (2004) ("[A] want of jurisdiction, unlike the trial court's instructional error discussed earlier, would preclude retrial of the charges."); Flora v. Rogers, 67 Ohio St.3d 441, 619 N.E.2d 690, 690 (1993) (approving court of appeal's decision finding that erroneous instruction issue "did not attack the jurisdiction of the court, and were, therefore, merely grounds upon which to appeal").
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2011.