23CA1980 Peo in Interest of LSM 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1980 City and County of Denver Juvenile Court No. 23JV30343 Honorable Pax Moultrie, Judge The People of the State of Colorado, Appellee, In the Interest of L.S.M., a Child, and Concerning J.A.R., Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE FOX Grove and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Kerry C. Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Colby Simpson, Assistant City Attorney Fellow, Denver, Colorado, for Appellee Josi McCauley, Guardian ad Litem The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant
1 ¶ 1 J.A.R. (father) appeals the judgment adjudicating L.S.M. (the child) dependent and neglected. We affirm. I. Background ¶ 2 Denver Human Services (the Department) received a referral with information that the then-sixteen-month-old child was on life support after ingesting a fentanyl pill. The Department filed a petition in dependency and neglect, alleging that that the child needed extensive medical intervention after ingesting fentanyl and father was responsible for the child at the time of the incident. ¶ 3 The juvenile court granted temporary custody of the child with the Department, for placement with the maternal grandmother. ¶ 4 Father denied the allegations in the petition. The juvenile court conducted a bench trial five months after the Department filed the petition. After the trial, the court found, by a preponderance of the evidence, that the child had been in an injurious environment and would continue to be in an injurious environment without the court’s intervention. The court sustained the petition and adjudicated the child dependent and neglected. 
2 II. Adjudication ¶ 5 Father contends that the juvenile court erred by adjudicating the child because “it was not shown that father had done anything to harm the child” and, at the time of the adjudication, the child was placed with the maternal grandmother with father’s support. We discern no basis for reversal. A. Standard of Review and Applicable Law ¶ 6 A child is dependent and neglected if, as pertinent here, “[t]he child’s environment is injurious to his or her welfare.” § 19-3-
102(1)(c), C.R.S. 2023. An injurious environment occurs “when a child is in a situation that is likely harmful to that child.” People in Interest of J.G., 2016 CO 39, ¶ 26. ¶ 7 “The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship.” People in Interest of A.M., 786 P.2d 476, 479 (Colo. App. 1989). 
3 ¶ 8 Because a dependency and neglect proceeding is preventive as well as remedial, an adjudication may be based not only on current or past harm but also on prospective harm. People in Interest of S.G.L., 214 P.3d 580, 583 (Colo. App. 2009). ¶ 9 If the petition is sustained, the juvenile court may enter a judgment of adjudication, which is not as to the parents but relates only to the child’s status on the date of the adjudication. K.D. v. People, 139 P.3d 695, 699 (Colo. 2006). At the adjudication stage, as elsewhere during a dependency and neglect proceeding, the best interest of the child is paramount. A.M. v. A.C., 2013 CO 16, ¶ 14. ¶ 10 The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the juvenile court. K.D., 139 P.3d at 702. ¶ 11 In determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the court’s decision. People in Interest of D.L.R., 638 P.2d 39, 41 (Colo. 1981). We will not disturb a juvenile court’s findings and conclusions if the record supports them, even 
4 though reasonable people might arrive at different conclusions based on the same facts. K.D., 139 P.3d at 702. B. Analysis ¶ 12 The juvenile court found, by a preponderance of the evidence, that the child’s environment was injurious to her welfare. In particular, the court found that there was no dispute that the child (1) ingested fentanyl; (2) “had a significant injury” as a result; (3) needed to be intubated after her heart stopped and she was not breathing; (4) stayed at the pediatric intensive care unit for four or five days; and (5) required inpatient acute rehabilitation and ongoing support for regression in motor and speech skills. The court found that, although it was unclear how the fentanyl came to be in the home, “any environment where a child can obtain and ingest fentanyl is an injurious one.” ¶ 13 The juvenile court clarified that it was “not finding that [father] — that anybody did anything purposefully to hurt [the child].” The court further found that there was no evidence of malicious intent and that father cared deeply for the child. ¶ 14 The record supports these findings, and we will not disturb them or the court’s legal conclusions. 
5 ¶ 15 The hospital social worker testified that she met with father at the child’s bedside. Father reported to her that he had left the child in the care of an elderly roommate. Father reportedly expressed doubt about his roommate’s ability to “keep up with” the child. Father reportedly suggested to the hospital social worker that the fentanyl might have been in the home because a former resident was prescribed fentanyl as part of cancer treatment. ¶ 16 The intake caseworker testified that she observed father’s interview with law enforcement the day of the incident. In that interview, father stated that he had found fentanyl in the community and brought it home to show his roommate before flushing it down the toilet. The caseworker testified that she believed the fentanyl may have somehow not successfully been flushed. ¶ 17 Regardless of how the fentanyl came to be in the home, the hospital social worker, intake caseworker, and ongoing caseworker each independently testified that the child had ingested fentanyl while father was responsible for her care, resulting in serious harm to the child. The ongoing caseworker summarized, in response to father’s questions, “somehow [the child] ingested fentanyl, that led 
6 to a series of very serious medical issues and complications for her. She ingested that fentanyl while she was in [father’s] care.” ¶ 18 Because of pending criminal charges, father did not testify at the adjudicatory hearing.
1 He presented no evidence to challenge the information the Department presented. ¶ 19 Father now argues that there was insufficient evidence to support the court’s judgment adjudicating the child dependent or neglected because nothing was presented to demonstrate that he had purposefully done anything to harm the child. Indeed, the Department made clear in closing argument that it did “not believe that [father] acted maliciously or with any intent necessarily to harm his daughter.” ¶ 20 However, because the adjudication relates to the status of the child, the Department did not need to demonstrate father’s intent to show that the child was in an injurious environment. See K.D. 139 P.3d at 699; see also J.G., ¶ 34 (an evaluation of whether an 1 We take judicial notice that the Denver District Court later accepted father’s guilty plea to child abuse resulting in serious bodily injury. See § 18-6-401(1)(a), (7)(a)(IV), C.R.S. 2023; see also People v. Sa’ra, 117 P.3d 51, 56 (Colo. App. 2004) (appellate court may take judicial notice of the contents of court records in a related case). 
7 injurious environment exists focuses on “the existence of an injurious environment rather than who caused it”). ¶ 21 Finally, father contends that, even if the child was in an injurious environment at the time of the incident, at the time of adjudication she was placed “in a safe and stable placement with the maternal grandmother which was supported by” father. True, father did not object to the child being placed with the maternal grandmother at the shelter hearing. However, it was the juvenile court, and not father, that arranged for the legal placement of the child with the maternal grandmother. And there was no evidence that father would have allowed the child to stay in that placement without the court’s intervention. In fact, the record suggests that the child had been staying with the maternal grandmother, but father asked that the child be returned to him the night before the child ingested the fentanyl. ¶ 22 Thus, while an adjudication must be based on the circumstances at the time of the adjudication, that does not mean the court must determine “whether the child is presently receiving proper care or whether his or her environment is presently injurious.” People in Interest of S.X.M., 271 P.3d 1124, 1130 (Colo. 
8 App. 2011). Here, the juvenile court properly considered “whether the child ‘will lack’ proper parental care if returned to his or her parent, and whether his or her environment ‘will be’ injurious to him or her in that event” despite the child’s placement with the maternal grandmother at the time of the adjudication. Id. III. Disposition ¶ 23 The judgment is affirmed. JUDGE GROVE and JUDGE SULLIVAN concur.