24CA0997 Peo in Interest of IEA 11-27-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0997
City and County of Denver Juvenile Court No. 23JV30663
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of I.E.A., a Child,

and Concerning S.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE HAWTHORNE*
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

---

Kerry C. Tipper, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1　In this dependency or neglect action, S.A. (mother) appeals the judgment adjudicating I.E.A. (the child) dependent and neglected. We affirm.

## I.　Background

¶ 2　The Denver Human Services (the Department) filed a petition in dependency or neglect, alleging concerns about mother's substance abuse and medical and educational neglect.  The juvenile court granted temporary custody of the child to the Department for placement with the maternal grandmother, who had been caring for the child for three months.

¶ 3　Mother requested an adjudicatory jury trial.  After a three day trial, the jury returned a special verdict finding that the child's circumstances met the definitions for determining the child was neglected or dependent under subsections 19-3-102(1)(b), (c), (d), and (e), C.R.S. 2024.

## II.　Jury Verdict Form

¶ 4　Mother first contends that the juvenile court erred by allowing the State to include in the jury verdict form the "no fault" language in section 19-3-102(1)(e).  This section provides that a "child is neglected or dependent if . . . the child is homeless, without proper

1

care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian." § 19-3-102(1)(e).

¶ 5   We review a juvenile court's decision to give a particular jury instruction or question on a jury verdict form for abuse of discretion. *People in Interest of S.X.M.*, 271 P.3d 1124, 1129-1131 (Colo. App. 2011). The juvenile court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or if it is based on an erroneous understanding or application of law." *People in Interest of M.W.*, 2022 COA 72, ¶ 12.

¶ 6   Mother asks us to apply the constitutional harmless error standard of reversal, under which we may disregard an error only if it is harmless beyond a reasonable doubt. *See Hagos v. People*, 2012 CO 63, ¶ 11. Our supreme court has not addressed whether the constitutional harmless error standard applies with respect to a parent's constitutional rights in dependency or neglect proceedings. *See A.M. v. A.C.*, 2013 CO 16, ¶ 16 n.10.

¶ 7   We decline to adopt the constitutional harmless error standard of review in this case because mother has not explained why it should be applied to the jury instructions given in her case. *People*

*in Interest of R.J.B.*, 2021 COA 4, ¶ 35 (explaining we will not consider a claim that "is merely a bald assertion without argument or development").

¶ 8 Instead, we apply C.R.C.P. 61, which directs the court to "disregard all errors and defects that do not affect any party's substantial rights." "An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *People in Interest of M.V.*, 2018 COA 163, ¶ 66.

¶ 9 The challenged jury verdict form contained five questions. The first three questions asked whether (1) the child was lacking proper parental care as a result of mother's acts or failures to act; (2) the child's environment was injurious to his welfare; and (3) mother was failing or refusing to provide proper or necessary care to the child. These questions address the definitions of a neglected or dependent child found in subsections 19-3-102(1)(b), (c), and (d). Questions four and five address the definition found in subsection 19-3-102(1)(e) and asked whether the child was (1) homeless or without proper care through no fault of mother and (2) not living at

home with a parent, guardian, or legal custodian through no fault of mother.

¶ 10    Even if we assume, without deciding, that the court erred by including the questions based on subsection 19-3-102(1)(e), we conclude that any error is harmless because the jury returned the special verdict questions finding that the child's circumstances met the statutory definitions of a neglected or dependent child based on the other subsections 19-3-102(1)(b), (c), and (d) as well as those based on subsection 19-3-102(e).  The Department need only prevail on one adjudicatory element for a child to be properly adjudicated dependent or neglected.  *See People in Interest of S.M-L.*, 2016 COA 173, ¶29 ("section 19-3-102 requires proof of only one condition for an adjudication.").

### III.   Jury Questions

¶ 11    Next, mother contends that the juvenile court erred by asking the caseworker a particular question received from a juror.  We discern no error.

¶ 12    The decision to ask a witness a question submitted by a juror is left to the juvenile court's sound discretion.  *See Medina v. People*, 114 P.3d 845, 847 (Colo. 2005).  The impact of juror

4

questions improperly submitted through the court are reviewed for harmless error. *Id.* at 858.

¶ 13 The caseworker testified that "if this case was to go away and temporary custody was to go away," there was nothing precluding mother from removing the child from the grandmother's home.

¶ 14 Shortly after, a juror submitted a question for the caseworker. The question's original wording is not in the record before us. The court modified the question to ask, "[I]f this case was to go away, are there any legal orders that are in existence that would allow for [the child] to remain in the care of [the grandmother]." During a bench conference, mother objected to the question being asked. The juvenile court overruled the objection, reasoning that the question posed "is consistent with other questions that have been asked" of the caseworker. When the caseworker asked for clarification of the question, the court rephrased the question, as follows: "If this case went away and all the orders that were entered in this case also go away, are there any existing legal orders outside of this case that would allow for [the child] to remain with [] his grandmother?" The caseworker answered, "Outside of this case, no."

¶ 15 The record supports the juvenile court's finding that the juror's question was substantially similar to a question that the caseworker had already answered during her testimony without objection. And the caseworker's testimony solicited by the juror's question was cumulative to her earlier testimony. So the court's decision to ask the juror's question was not manifestly arbitrary, unreasonable, or unfair. Also, because the question elicited testimony that was cumulative of unobjected to and unappealed testimony, we need not address mother's further argument that the juror's question improperly allowed the jury to consider whether the child would remain with the grandmother without continued court intervention.

## IV. Directed Verdict

¶ 16 Finally, mother contends that the juvenile court erred by denying her motion for a directed verdict because mother had made "appropriate arrangements" for the child's care before the Department became involved.

¶ 17 We review a juvenile court's ruling on a motion for directed verdict de novo. *People in Interest of L.S.*, 2023 CO 3M, ¶ 13. "Even so, directed verdicts are disfavored," and we "must consider all the

facts in the light most favorable to the nonmoving party and determine whether a reasonable jury could have found in favor of the nonmoving party." *Id.* (citations omitted).

¶ 18 After the Department presented its evidence, mother moved for a directed verdict, arguing that "as a matter of law they just haven't met their burden on any of the factors." The court considered "the evidence in the light most favorable to the petitioner" and denied the motion.

¶ 19 We discern no error.

¶ 20 The child testified that he didn't live with mother "because [he] just didn't feel safe" with her. The intake caseworker testified that the grandmother was unable to enroll the child in school or take him to medical appointments before the Department's intervention. And the ongoing caseworker testified that mother's substance abuse concerns were untreated and continued to present a safety concern.

¶ 21 Mother now contends that the court could not find the child dependent or neglected based on the Department's evidence because she made "appropriate arrangements" by allowing the child to live with the grandmother. But the Department's evidence cast

doubt on the longevity of mother's acquiescence to the child's staying with grandmother.

¶ 22     The intake caseworker testified that the child was living with the grandmother when she received the referral.  She also testified that mother and the grandmother had an agreement before the petition was filed that the child could be with the grandmother when he didn't feel safe.  But the caseworker expressed concern about there being no documentation or firm agreement allowing the grandmother to make educational or medical decisions for the child.  The intake caseworker testified that mother was not willing to give the grandmother decision-making authority, declined to issue a power of attorney to the grandmother, and disagreed with granting the grandmother temporary custody through the dependency and neglect action.

¶ 23     The child testified that his mother wanted him to return to her home but he "didn't want to go back . . .because [he] didn't feel safe."  The ongoing caseworker testified that mother consistently told her that she wanted the child to return to her care after he finished the school year.  At the time of the adjudicatory trial, the end of the school year was only a couple of months away.  The

caseworker opined that it was not safe for the child to be parented by mother without state intervention, and that the child living with the grandmother — on its own — did not alleviate the Department's child protection concerns.

¶ 24 Given this evidence, we discern no error in the juvenile court's denial of mother's motion for a directed verdict. The Department pursued adjudication on several grounds, including injurious environment, lack of proper parental care, failure to provide reasonable parental care, and homeless or not living with a parent through no fault of mother's. At the time of mother's motion, the evidence before the jury, when considered in the light most favorable to the Department, could have supported one or all of these requirements for adjudication. In fact, the jury returned its special verdict finding the child was dependent or neglected on all the grounds submitted by the Department — findings that mother does not challenge.

## V. Disposition

¶ 25 The judgment is affirmed.

JUDGE WELLING and JUDGE BROWN concur.

9