25CA0536 Peo in Interest of AHJR 08-28-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0536
Arapahoe County District Court No. 24JV274
Honorable Shay K. Whitaker, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.H.J.R., a Child,

and Concerning J.T.R.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 28, 2025

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney,
Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Elizabeth A. McClintock, Office of Respondent Parents' Counsel, Colorado
Springs, Colorado, for Appellant

¶ 1     In this dependency and neglect case, J.T.R. (father) appeals the juvenile court's judgment adjudicating A.H.J.R. (the child) dependent and neglected and the order adopting a treatment plan. We affirm.

## I.     Background

¶ 2     Following a law enforcement referral raising concerns about R.M.K. (mother), including concerns about her substance use and neglect of the child, the Arapahoe County Department of Human Services entered into a safety plan with the family.  Among other things, the parents agreed that father would provide primary care to the child and that paternal grandmother would supervise mother's family time.  After questions arose regarding paternal grandmother's ability to properly supervise, the Department sought and was granted temporary custody and placed the child with father.  Shortly thereafter, the juvenile court transferred temporary custody to father.

¶ 3     The Department filed a petition in dependency or neglect against the parents alleging (1) abandonment, mistreatment, or abuse; (2) lack of proper parental care due to the acts or omissions of the parents; (3) injurious environment; and (4) failure to provide

proper care for the child.  *See* § 19-3-102(1)(a)-(d), C.R.S. 2025. Father denied the allegations and requested a trial.  One week later, based on information that law enforcement found the parents in possession of illegal substances while the child was in their care, the juvenile court transferred temporary custody back to the Department.  The Department also amended the petition based on this new information and the parents' subsequent arrests.

¶ 4 Following a court trial, the juvenile court adjudicated the child dependent and neglected under section 19-3-102(1)(a)-(d).  The court then held an uncontested dispositional hearing and adopted a treatment plan for father.

## II. Sufficiency of the Evidence

¶ 5 Father contends that insufficient evidence supported the court's adjudication.  We disagree.

### A. Applicable Law and Standard of Review

¶ 6 "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial

relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989).

¶ 7    As relevant here, a child is dependent or neglected when (1) a parent has abandoned the child or has subjected them to mistreatment or abuse or a parent has allowed another to mistreat or abuse the child; (2) the child lacks proper parental care through the actions or omissions of the parent; (3) the child's environment is injurious to their welfare; or (4) a parent has failed or refused to provide the child with proper or necessary care.  § 19-3-102(1)(a)-(d).

¶ 8    The factfinder — in this case, the juvenile court — must base its findings supporting an adjudication of dependency or neglect on existing circumstances that relate to the child's status at the time of adjudication.  *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008).  But that doesn't mean a juvenile court must find that the child is receiving improper care at the time of the hearing.  *People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011).  Instead, a court may base its adjudication on current, past, or prospective harm.  *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 15.

¶ 9    When considering prospective harm, the task is to determine whether the child will lack proper parental care or whether the child's environment will be injurious to their welfare if returned to the parent.  *See S.X.M.*, 271 P.3d at 1130.  Said another way, a juvenile court may consider whether it is likely or expected that a child will be dependent or neglected if returned to the parent.  *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-17.  This determination may be based on the "parent's past conduct and current circumstances."  *Id.* at ¶ 17.

¶ 10    Whether a child is dependent or neglected presents a mixed question of fact and law.  *People in Interest of M.M.*, 2017 COA 144, ¶ 17.  Thus, we review the juvenile court's factual findings for clear error but review de novo the court's legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 11    When determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the juvenile court's decision.  *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).  We will not disturb the court's findings and conclusions if the

record supports them, even though reasonable people might reach different conclusions based on the same facts. *Id.* We may, however, set aside a court's order based on errors of law or findings that don't conform to the statutory criteria. *Id.*

## B.    Analysis

¶ 12    At the conclusion of the adjudicatory trial, the juvenile court found that the Department "demonstrated by a preponderance of the evidence all four of the grounds" raised in the petition. Father asserts that insufficient evidence supported this finding.

### 1.    Injurious Environment

¶ 13    We conclude that sufficient evidence supported the juvenile court's determination that the child's environment was injurious to her welfare.

¶ 14    The juvenile court found it "quite clear" based on the evidence presented that the parents exposed the child to an environment containing various paraphernalia indicative of drug use or distribution. The court expressed concern for the child's emotional, physical, and mental well-being as well as father's ability to act as a protective parent. The record supports these findings.

¶ 15 The law enforcement officer who arrested the parents approximately two months before the adjudicatory trial testified about his observations of the parents and the child. The officer pulled over a vehicle driven by father and saw mother in the passenger seat, the child in the backseat, and an overall state of "disarray." After searching the vehicle, the officer found, among other things, (1) "a lot" of methamphetamine "scattered throughout"; (2) additional drugs "all over"; (3) devices used to smoke and ingest drugs, with residue on them, throughout the vehicle, including the backseat; and (4) several syringes, one of which was full of a clear substance. The officer testified that the items found were consistent with drug use and distribution.

¶ 16 The ongoing caseworker testified that her main safety concern was the amount of drugs and drug paraphernalia around the child and the risk of accidental ingestion, especially in the vehicle. She further expressed concern about father's protective parenting capacity because he (1) failed to keep the child away from drugs and drug paraphernalia and (2) violated the Department's safety plan by allowing contact between mother and the child without the agreed-upon supervisors present.

¶ 17    We aren't persuaded by father's argument that the Department failed to introduce photographic evidence showing where the drugs and paraphernalia were located in the vehicle in relation to the child, rendering the evidence insufficient.  The law enforcement officer described the state of the vehicle in detail.  And it was the juvenile court's role to judge the credibility of witnesses and determine the inferences and conclusions to be drawn from the evidence.  *People in Interest of M.S.H.*, 656 P.2d 1294, 1297 (Colo. 1983); *see also S.G.L.*, 214 P.3d at 583 ("[W]e draw every inference fairly deducible from the evidence in favor of the court's decision.").

¶ 18    Father also asserts the vehicle wasn't representative of the child's actual "day-to-day environment."  But the evidence detailed above supported a finding that father placed the child in a situation "likely harmful" to her welfare.  *People in Interest of J.G.*, 2016 CO 39, ¶ 26 (defining injurious environment); *see also People in Interest of C.M.*, 2024 COA 90, ¶ 29 (describing that an injurious environment inquiry "will generally be based on evidence that the child *was* in an injurious environment while in the parent's care").  Father cites no authority suggesting that "environment" as used in

section 19-3-102(1)(c) is limited to the child's customary or predominant surroundings.

¶ 19    Furthermore, recall that an adjudication may be based on current, past, or prospective harm, *see G.E.S.,* ¶ 15, and the court may consider evidence about a parent's past condition or conduct, such as incarceration or drug use, when determining the risk of prospective harm, *see S.N.,* ¶¶ 17-18.  In addition to the evidence detailed above, the juvenile court took judicial notice of father's prior criminal history, including convictions for drug-related charges and recently missed drug tests.  A second law enforcement officer also testified about his interaction with father during a traffic stop approximately four months before the adjudicatory trial.  The officer testified that he found methamphetamine in father's possession and drug paraphernalia in the vehicle's backseat.  While the officer acknowledged that the child wasn't in the vehicle, the caseworker identified the vehicle as father's main form of transportation and explained that methamphetamine residue posed a danger to the child.

¶ 20    Viewing the evidence in the light most favorable to the Department and drawing every reasonable inference in favor of the

juvenile court's decision, as we must, we conclude that the record contains sufficient evidence to support the court's determination that the child was dependent and neglected under section 19-3-102(1)(c). *See S.G.L.*, 214 P.3d at 583.

### 2. Other Statutory Grounds

¶ 21 Having concluded that sufficient evidence supported the juvenile court's determination that the child was dependent or neglected on one statutory ground, we need not address the remaining grounds. *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29 ("[S]ection 19-3-102 requires proof of only one condition for an adjudication."), *aff'd on other grounds sub nom., People in Interest of R.S. v. G.S.*, 2018 CO 31.

### III. Dispositional Order

¶ 22 Father also contends that if we reverse the juvenile court's adjudicatory judgment, we must also reverse the dispositional order. Because we have affirmed the adjudicatory judgment, we need not address this contention.

### IV. Disposition

¶ 23 We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.