25CA0554 Peo in Interest of MCC 09-04-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 25CA0554
Arapahoe County District Court No. 24JV92
Honorable Shay K. Whitaker, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of M.C.C. a/k/a M.C.T., a Child,

and Concerning M.D.A. a/k/a M.D.W.,

Appellant.

_____

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LUM
Pawar and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

_____

Ron Carl, County Attorney, Erinn Walz, Assistant County Attorney, Aurora, Colorado, for Appellee

Alison Bettenberg, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this dependency and neglect proceeding, M.D.A., a/k/a M.D.W. (mother), appeals the judgment adjudicating M.C.C., a/k/a M.C.T. (the child), dependent and neglected.  We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services filed a petition in dependency and neglect concerning the child.  According to the Department, the child and mother were living in an "extremely messy" home in which multiple occupants were using illicit substances.  The child was removed from mother's custody and placed with kin.

¶ 3    Mother denied the allegations in the petition, and the juvenile court conducted a bench trial.  After the trial, the juvenile court adjudicated the child dependent and neglected under section 19-3-102(1)(b)-(d), C.R.S. 2025.

## II.    Sufficiency of the Evidence

¶ 4    Mother contends that the evidence was insufficient to establish that the child was dependent or neglected.  We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 5 The purpose of an adjudicatory trial is to determine whether the factual allegations in the dependency or neglect petition are supported by a preponderance of the evidence and whether the status of the child warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13.

¶ 6 A child may be adjudicated dependent or neglected if the department proves that one or more of the conditions set forth in section 19-3-102 exist. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 25, *aff'd on other grounds sub nom.*, *People in Interest of R.S. v. G.S.*, 2018 CO 31. As relevant here, a child is dependent or neglected if (1) the child lacks proper parental care through the actions or omissions of a parent; (2) the child's environment is injurious to his welfare; or (3) a parent fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other necessary care. § 19-3-102(1)(b)-(d).

¶ 7 An adjudication must be based on existing circumstances and relate to the child's status when adjudication occurs. *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008). But that

2

does not mean a juvenile court must find that the child is receiving improper care or living in an injurious environment at the time of the hearing. *See People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011). Rather, an adjudication may be based on past, current, or prospective harm. *See G.E.S.*, ¶ 15.

¶ 8 In determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the juvenile court's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). We may not disturb the court's findings and conclusions if the record supports them, even though reasonable people might arrive at different conclusions based on the same evidence. *Id.*

### B. Analysis

#### 1. Injurious Environment

¶ 9 We conclude that sufficient evidence supported the juvenile court's determination that the child was dependent or neglected based on the injurious environment ground under section 19-3-102(1)(c). *See S.M-L.*, ¶ 29 ("[S]ection 19-3-102 requires proof of only one condition for an adjudication.").

3

¶ 10   An injurious environment is a situation that is "likely harmful" to the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 26. A child's adjudication as dependent or neglected under the injurious environment provision does not require a determination of parental fault. *See id.*, ¶ 44.

¶ 11   The court heard testimony from two police officers who had walked through the premises not long after the Department's initial involvement with the family. One officer testified that the condition of the home was "dilapidated" and that the home smelled of dog, cat urine, and feces. The child lived with mother and his maternal grandmother in the basement, in one of multiple "makeshift bedrooms" divided only by sheets hanging from the ceiling. Roughly five or six people in total reported living in the basement when the walk-through took place. This officer also testified that he observed the following in the basement: (1) "loose pills"; (2) drug paraphernalia, such as tinfoil and vials; (3) dog feces on the floor; and (4) buckets containing unknown brown liquids. Additionally, the officer testified that he didn't "believe [the child] would have had a problem" getting access to "anything throughout that house."

¶ 12    Notably, the other officer testified that a man he encountered in the basement had admitted that he recently used illicit drugs, and another man in the garage appeared to be "very high" and was "passed out." Both police officers testified that the police had been called to the premises many times, including for calls concerning drug use.

¶ 13    The caseworker testified that "[t]here were . . . several people in and out of the home with criminal histor[ies], particularly drug use." In addition, the caseworker opined that the child's environment was injurious to his welfare while he was in mother's care.

¶ 14    This evidence supports the juvenile court's findings that the house where the child was living when removal occurred (1) was "clearly in disarray"; (2) contained drug paraphernalia and loose pills; and (3) had feces on the floor and an unknown liquid substance in open buckets that was "very clear[ly] . . . not water." And it supports the court's ultimate conclusion that the child's environment was injurious to his welfare.

¶ 15    We are not persuaded otherwise by mother's arguments that the evidence was insufficient. First, mother asserts that no

evidence directly connected her to substance use or "involve[ment]" in substance use. But the juvenile court acknowledged this and nonetheless determined, with evidentiary support, that the child could have been exposed to or ingested illicit substances due to the lack of doors and walls in the basement. Mother's conduct need not have caused the hazards on the premises for the court to determine that the hazards created an injurious environment. *See People in Interest of M.M.*, 2017 COA 144, ¶ 21 ("[T]he focus of the injurious environment provision is on 'the *existence* of an injurious environment rather than who caused it,' . . . and a parent's conduct or condition is not necessarily relevant when determining whether a child is dependent and neglected under this provision.") (citation omitted).

¶ 16    Second, mother contends that the child, who was six years old at the time of removal, was "old enough not to pick up random objects and put them in his mouth." Mother appears to claim that the child was able to protect himself from the hazards in the environment because of his age. But the court did not draw that inference based on the evidence presented. And it is the juvenile court's province to determine the inferences and conclusions to be

6

drawn from the evidence. *People in Interest of M.S.H.*, 656 P.2d 1294, 1297 (Colo. 1983); *see also S.G.L.*, 214 P.3d at 583 ("In determining whether the evidence is sufficient to sustain an adjudication, . . . we draw every inference fairly deducible from the evidence in favor of the court's decision.").

¶ 17     Third, in response to the juvenile court's concern that individuals whom mother did not know (some of whom may be on parole) were "coming and going" from the home, mother asserts that her "not knowing all the occupants or [not knowing] that some were [on parole] was not necessarily surprising," given the short time she lived in the home. But even if it wouldn't be "surprising" that mother did not know the other occupants, that has little to no bearing on the central question of whether the child would be in a likely harmful situation if returned to mother's care. *See J.G.*, ¶ 26.

¶ 18     Thus, viewing the evidence in the light most favorable to the Department and drawing every fairly deducible inference in favor of the court's decision, we conclude that the record supports the court's determination that the child was dependent and neglected under subsection (1)(c). *See S.G.L.*, 214 P.3d at 583.

### 2. Other Statutory Grounds

¶ 19 Having concluded that sufficient evidence supported the juvenile court's determination that the child was dependent or neglected on one statutory ground, we need not address the remaining grounds upon which the court relied. *See S.M-L.*, ¶ 29.

### III. Disposition

¶ 20 The judgment is affirmed.

JUDGE PAWAR and JUDGE TAUBMAN concur.