**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**William J. GARCIA, Defendant–Appellant.**

**No. 99CA0785.**

Colorado Court of Appeals, Div. I.

Nov. 24, 2000.

Rehearing Denied Dec. 21, 2000.

Ken Salazar, Attorney General, Kathleen M. Byrne, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Elizabeth Booth, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, William J. Garcia, appeals the judgment of conviction entered upon a jury verdict finding him guilty of aggravated robbery. We affirm.

On March 11, 1997, the victim stopped his car to pick up two strangers, a man and a woman, who claimed they needed a ride to their hotel. The victim drove the couple to a deserted industrial park where the man told him to put his wallet on the seat and get out of the car or he would be shot. The victim complied, and the couple stole the victim's car.

During a photo line-up, the victim identified defendant and his companion. The victim also identified defendant during the trial. Defendant represented himself, with assistance from an advisory counsel, and was found guilty of one count of aggravated robbery.

## I. Speedy Trial

### A. Uniform Mandatory Disposition of Detainers Act

Defendant first contends that the trial court erred in denying his motion to dismiss based upon a violation of his rights under the Uniform Mandatory Disposition of Detainers Act (UMDDA). We disagree.

The UMDDA controls the disposition of detainers within the state of Colorado and guarantees a defendant in a criminal case the right to a speedy trial. Sections 16–14–101 to 16–14–108, C.R.S.2000; *People v. Higinbotham,* 712 P.2d 993 (Colo.1986). Section 16–14–104(1), C.R.S.2000, provides in pertinent part: "Within ninety days after the receipt of the request by the court and the prosecuting official ... the indictment, information, or criminal complaint shall be brought to trial...."

■ Failure to hold trial within the ninety-day period set forth in § 16–14–104 requires dismissal of the charges pending against defendant, regardless of prejudice. *People v. Naulls,* 937 P.2d 778 (Colo.App.1996).

■ A defendant may waive his or her right to a speedy trial under the UMDDA expressly or by affirmative conduct, such as by participating in setting the trial date outside of the speedy trial provisions. *People v. Martinez,* 712 P.2d 1070 (Colo.App.1985).

■ Also, because the speedy trial right conferred by the UMDDA is statutory and not constitutional, a defendant may voluntarily waive his or her rights under the UMDDA without showing that the waiver was knowing or intelligent. *People v. Martin,* 707 P.2d 1005 (Colo.App.1985).

Any express consent to the delay or other affirmative conduct by the defendant is treated as a waiver of the right to speedy trial. *People ex rel. Gallagher v. District Court,* 933 P.2d 583 (Colo.1997).

■ Where motions are made for a defendant's benefit, any reasonable time necessitated by such motions, including continuances, extends the speedy trial time limit. *People v. Anderson,* 649 P.2d 720 (Colo.App. 1982).

Here, defendant formally requested a speedy trial under the UMDDA on January 12, 1998. The trial court set a preliminary trial date for May 1, 1998, and defendant objected on the ground that the date was outside the speedy trial provisions of the UMDDA. The court disagreed, stating that it had 180 days to try the case.

Because the defense attorney's office was representing both defendant and an adverse witness, the court granted that attorney's motion to withdraw and the hearing was continued until January 26, 1998, during which time a new defense attorney was to be appointed by the court.

At the hearing on January 26, 1998, the trial court applied the speedy trial provisions of 180 days contained in § 18–1–405, C.R.S. 2000, and formally set the trial for May 1, 1998. Defendant objected, and the trial court had the following conversation with defendant:

Defendant: Again, object to those trial dates.

The Court: Why? Why do you object?

Defendant: For speedy disposition.

The Court: It's within the speedy trial. What is your speedy trial

Defendant: I'm objecting.

The Court: If you're acting as your own attorney, tell me—

Defendant: You're saying it's within speedy trial; is that right? I'm just asking the court record to reflect what—

The Court: Any objections?

Defendant: To what?

The Court: To the setting?

Defendant: Okay. That's fine.

On March 18, 1998, defendant filed a motion requesting a court-appointed expert on the issues of fingerprint and eyewitness identification. This motion was heard on April 20, 1998, and the court informed defendant that, because of the proximity of the trial date, in order to grant the request, it would also have to continue the trial. The court further informed defendant that requesting a continuance would constitute a waiver of his rights to a speedy trial. Defendant requested a continuance, waived his right to a

speedy trial, and the trial date was reset for September 29, 1998. Later, the trial date was reset for July 20, 1998.

Also at this hearing, defendant filed a motion to dismiss based on the failure of the trial court to grant him a speedy trial within the ninety-day period guaranteed by the UMDDA. Arguments on this motion were deferred until May 22, 1998.

On May 22, the prosecution argued that Arizona had not released defendant from its custody until April 24, 1998. Consequently, the prosecution asserted that, while defendant had been in the physical custody of Colorado for the past six months, he had been in the legal custody of Arizona.

On May 29, the trial court denied defendant's motion to dismiss, finding that he was not released from Arizona's custody until April 24, 1998. Therefore, the court concluded that pursuant to defendant's request for a speedy trial under the UMDDA, it had ninety days from April 24 to bring defendant to trial.

On July 20, the rescheduled trial date, defendant was in trial in Jefferson County and did not appear for trial in Denver County. Defendant's advisory counsel was present in Denver and objected to the resetting of the trial for September 29, 1998. However, on September 29, 1998, defendant again requested a continuance because he had not received all of the transcripts of the prosecution witnesses' prior testimony. Defendant expressly waived his speedy trial rights, and the trial was reset for November 10, 1998.

Here, even if we assume defendant is correct that the UMDDA speedy trial clock began to run on January 12, 1998, he repeatedly and voluntarily waived his right to a speedy trial. He did so by affirmative conduct, express waivers, and agreements to trial dates outside the speedy trial provisions. *People v. Martinez, supra.*

 Specifically, defendant tolled the speedy trial time limit on March 18, 1998, when he filed a motion for a court-appointed expert. Although the motion was not granted until April 20, 1998, the delay attendant to its consideration was attributable to the defendant, and the speedy trial period was

tolled once the motion was filed. *See Williamsen v. People,* 735 P.2d 176 (Colo.1987) (delay regarding defendant's motion to dismiss is attributable to defendant). Moreover, on April 20, 1998, while the time limit was tolled, defendant expressly waived his right to a speedy trial in order to obtain a court-appointed expert. This waiver precluded him from challenging any violation of the UMDDA speedy trial provisions. *See People ex rel. Gallagher v. District Court, supra.*

Therefore, even if we assume defendant's initial speedy trial contention was meritorious, his actions on April 20 and subsequent dates constituted a waiver of his UMDDA claim. Accordingly, we conclude that the trial court did not err in rejecting defendant's speedy trial contention.

B. Interstate Agreement on Detainer

Defendant also contends that the trial court violated his rights under the Interstate Agreement on Detainer (IAD) when the trial court held him in Colorado on a new charge, escape, and refused to send him back to Arizona after the charges upon which the IAD was based had been adjudicated. We disagree.

The IAD governs the disposition of interstate detainers filed by a state against a person imprisoned in another state. Section 24–60–501, C.R.S.2000. Under the IAD, the sending state, which has legal custody of a defendant, may send him or her to the receiving state, which will obtain temporary custody to try the defendant on pending charges in that state. Section 24–60–501 Article V(d), C.R.S.2000, states, in pertinent part:

> The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers *or for prosecution on any other charge or charges arising out of the same transaction.* (emphasis added)

■ Thus, the IAD permits a receiving state to file additional charges against a defendant if those additional charges are based upon the same transaction as the IAD charge. However, the IAD does not permit Colorado authorities to hold and prosecute a defendant who is charged with new and unrelated crimes in Colorado while such defendant is being held in Colorado pursuant to the IAD. *Selph v. Buckallew,* 805 P.2d 1106 (Colo.1991).

Here, defendant escaped from jail in Colorado on February 19, 1997, and went on a crime spree in Colorado and Arizona. He committed the aggravated robbery that is the subject of this case on March 11, 1997; and on March 17, 1997, he was arrested in Arizona and charged with another count of aggravated robbery. After defendant pled guilty to the Arizona charge, the Denver District Attorney requested Arizona authorities to return him to Colorado pursuant to the IAD so he could be prosecuted on the escape charge.

After defendant was sent to Colorado, the Denver District Attorney filed the charge at issue here alleging that defendant had committed aggravated robbery when he was a fugitive.

■ Defendant does not challenge the propriety of his being brought to Colorado pursuant to the IAD for prosecution of the escape charge. Instead, he argues that Colorado should have returned him to Arizona rather than holding him in Colorado for prosecution on the new and unrelated charge of aggravated robbery.

Although both parties agree there are gaps in the record, based on our review of that record, we conclude that the additional charge filed against defendant when he was in Colorado was not a new or unrelated charge. Rather, the aggravated robbery charge arose out of the same transaction as the escape charge that was the subject of the IAD. After escaping from jail, defendant committed aggravated robbery when he stole the car that allowed him to go on a crime spree across Colorado and Arizona. Thus, the aggravated robbery charge arose out of the same transaction as the escape charge, and defendant was properly held in Colorado and prosecuted on the additional charge.

Accordingly, the trial court did not err by not sending defendant back to Arizona pursuant to § 24–60–501 Article V(d).

## II. Lesser Non–Included Offense Instruction

■ Defendant contends that the trial court erred by refusing to give a jury instruction on the lesser non-included offense of second degree misdemeanor aggravated motor vehicle theft. We disagree.

■ A lesser non-included offense is an offense less serious than the charged offense, arising from the same facts but containing at least one element different from those in the original charge. *People v. Skinner*, 825 P.2d 1045 (Colo.App.1991).

■ A trial court may instruct the jury on a lesser non-included offense if there is a rational basis upon which the jury might acquit the defendant of the charged offense and simultaneously find him or her guilty of the lesser offense. *People v. Skinner, supra.*

■ Normally, a defendant will ask for a lesser non-included jury instruction. However, the prosecution may request a jury instruction on a lesser non-included offense over a defendant's objection if the charging document contains allegations of the lesser non-included offense sufficient to give the defendant notice of such added charge. *People v. Garcia*, 940 P.2d 357 (Colo.1997). In *Garcia*, the supreme court permitted such a request because the charging document there adequately notified the defendant of the prosecution's proposed lesser non-included offense charge. Thus, the court concluded that the instruction on the lesser non-included offense did not violate the defendant's right to due process.

Here, prior to the jury instruction phase of the trial, defendant made a motion *in limine* to suppress evidence that he had used the victim's car to commit other crimes. Defendant argued that this information should be excluded on evidentiary grounds because it was more prejudicial than probative. The court granted this motion.

Subsequently, defendant requested that the court give a jury instruction for the lesser non-included offense of second degree aggravated motor vehicle theft. Defendant did not request the court to instruct the jury on the lesser non-included offense of first degree aggravated motor vehicle theft.

First degree aggravated motor vehicle theft occurs when a person knowingly obtains control over a motor vehicle and one of eight specified aggravating factors is shown, including use of the motor vehicle in the commission of a crime other than a traffic offense. It is a class four felony if it involves a motor vehicle whose value is less than $15,000, but it is a class three felony if the motor vehicle's value exceeds $15,000 or if the defendant has been twice previously convicted or adjudicated of motor vehicle theft. Section 18–4–409(3), C.R.S.2000.

Second degree aggravated motor vehicle theft occurs when a person knowingly obtains control over the motor vehicle of another without authorization or by threat or deception, and none of the first degree aggravated motor vehicle theft aggravating factors is present. Second degree aggravated motor vehicle theft is a class 2 misdemeanor, or a class 5 or a class 6 felony depending on the circumstances. Section 18–4–409(4), C.R.S.2000.

The prosecution objected to defendant's request that the court instruct the jury on second degree aggravated motor vehicle theft. It argued that, if the trial court granted defendant's request, it would have to grant the prosecution's request to instruct the jurors on the more serious, lesser non-included offense of first degree aggravated motor vehicle theft and allow it to introduce the previously excluded evidence that the victim's car was used in the commission of other crimes. *See* § 18–4–409(2)(d), C.R.S. 2000.

The trial court found that defendant's request to exclude the evidence that the victim's car was used in the commission of further crimes precluded defendant from requesting an instruction on the lesser non-included offense of second degree aggravated motor vehicle theft.

Had the prosecution's request for a jury instruction on the lesser non-included offense

of first degree aggravated motor vehicle theft been granted, there would have been no due process violation because, under *People v. Garcia, supra,* the very information defendant sought to exclude demonstrates that he was on notice of the basis for such a possible additional jury instruction.

Because defendant had notice of such potential offense and prevented it from being brought by seeking to exclude the evidence of his additional criminal activity, the prosecution had a valid basis for asking the trial court to deny defendant's motion for giving the lesser non-included offense of second degree aggravated motor vehicle theft.

■ Accordingly, we conclude that a defendant may not seek to exclude evidence of other crimes on the basis that it would be prejudicial under CRE 403 and then preclude the prosecution from seeking to establish a more serious, lesser non-included offense which requires proof of that very excluded evidence.

Here, defendant was charged with aggravated robbery, a class three felony. As noted, he sought an instruction on the lesser non-included offense of second degree aggravated motor vehicle theft. By virtue of the trial court's exclusion of evidence that the defendant had used the victim's car to commit other crimes, the prosecution would not have been able to establish the more serious lesser non-included offense of first degree aggravated motor vehicle theft.

Accordingly, because defendant may not manipulate the exclusion of certain evidence and then unfairly seek to limit the scope of lesser non-included offenses that may be presented to the jurors, we hold that the trial court did not err in denying defendant's request for the lesser non-included offense instruction for second degree aggravated motor vehicle theft. *See generally People v. Arguello,* 737 P.2d 442 (Colo.App.1987) (a defendant may not manipulate his right to an attorney so as to impede the efficient administration of justice or to "whipsaw the court" between a constitutional right and the defendant's own ineffectiveness at trial); *People v. Anderson, supra* (when defendant seeks and obtains continuances for his benefit, he may not assert speedy trial violation).

## III. Viewing of Defendant in Custody

■ Defendant next argues that the trial court abused its discretion in denying his motion for mistrial because his right to have his case heard by a fair and impartial jury was violated after five of the jurors saw him being escorted by sheriff's deputies. We disagree.

■ In order to find that a jury's exposure to a criminal defendant being escorted by police during his or her trial is grounds for a mistrial, the exposure must be both unnecessary and prejudicial. *People v. Dillon,* 655 P.2d 841 (Colo.1982).

■ The decision of whether to grant a mistrial is within the discretion of the trial court. *People v. Chastain,* 733 P.2d 1206 (Colo.1987). Mistrial is a drastic remedy and warranted only when the prejudice to the accused is too substantial to be remedied by other means. Absent a gross abuse of discretion and a showing of prejudice to the defendant, the trial court's decision as to a mistrial will not be disturbed on appeal, *People v. Collins,* 730 P.2d 293 (Colo.1986).

Here, defendant asserts that, on two different occasions, a total of five jurors saw him under police escort while he was walking between the holding cell and the courtroom. He argues that these incidents caused the jurors to be exposed to improper character evidence. We are not persuaded.

While in the courthouse, defendant was placed under police escort to walk between the holding cell and the courtroom. Defendant was not under any visible restraint and was dressed professionally. The trial court found that because of the layout of the courthouse, it was nearly impossible to prevent some exposure and that it was doing the best job it could to avoid such exposure.

As in *People v. Dillon, supra,* the court properly considered the need for security, the fact that defendant was not handcuffed, and the inadvertent nature of the exposure to conclude that a mistrial was not warranted.

Defendant has made no showing that the exposure was unnecessary or that any of the

jurors was actually prejudiced, as required by *People v. Dillon, supra.* Also, a review of the record convinces us that the trial court took adequate precautionary measures to prevent such exposure. Thus, we perceive no abuse of discretion in the trial court's denial of a mistrial.

## IV. Challenges for Cause

Defendant further contends that the trial court erred when it failed to inquire whether either party had any challenges for cause. We perceive no error.

In order to ensure that a defendant's fundamental right to a fair trial by a panel of impartial jurors is enforced, a defendant has the authority to challenge potential jurors for cause. A trial court must dismiss potential jurors when they are biased or prejudiced. *Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980).

Here, one member of the jury venire informed the court that he had a mild case of attention deficit disorder and was concerned about his ability to sit through a long trial. Defendant asserts that the trial court did not give the parties an opportunity to make challenges for cause, requiring defendant to use a peremptory challenge to excuse this juror. However, the record does not reveal any reversible error.

After the peremptory challenges and opening statements had been made, defendant informed the court that it had failed to allow the parties to make challenges for cause. The court disagreed, but stated that even if defendant had challenged this particular juror for cause, it was "not too concerned that he is disqualifiable on that basis. This case is not going that long and we are taking breaks so it won't be that incessant for him."

Therefore, we conclude that any error on the part of the trial court was harmless because the juror in question would not have been dismissed for cause even if defendant had made such a challenge.

## V. Prior Inconsistent Statements

Finally, defendant asserts that the trial court abused its discretion by improperly curtailing defendant's cross-examination of a prosecution witness. We disagree.

### A.

First, defendant contends that the trial court abused its discretion by not allowing him to impeach a prosecution witness through the use of prior inconsistent statements. We are not persuaded.

Trial courts have broad discretion in deciding whether evidence is admissible. The evidentiary ruling of a trial court will stand unless a defendant can demonstrate that the court abused its discretion. To show an abuse of discretion, a defendant must establish that, under the circumstances, the trial court's decision to reject the evidence was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Here, when defendant asked the witness whether she had driven the car on the night of the robbery, she answered "no." Defendant attempted to impeach her with a prior inconsistent statement that she had driven the car that night, but the trial court denied this request. Defendant impeached the witness on numerous other grounds, however, including her prior drug use, her intoxication on the night of the crime, her prior relationship with defendant, and her unwillingness to testify at this trial.

Consequently, even if the court abused its discretion by not allowing defendant to cross-examine the witness about her prior inconsistent statements concerning whether she was driving the car with defendant on the night of the aggravated robbery, such error was harmless because she had been impeached on more significant matters. *See People v. McKnight,* 626 P.2d 678 (Colo.1981).

### B.

Second, defendant contends that the trial court abused its discretion by not allowing him to cross-examine a prosecution witness concerning her prior misdemeanor conviction. We disagree.

As a general rule, evidence of a prior misdemeanor conviction is inadmissible for

impeachment purposes. However, CRE 608(b) permits a court, in its discretion, to admit evidence of specific instances of conduct on cross-examination if it is probative of truthfulness or untruthfulness. *People v. Jones*, 971 P.2d 243 (Colo.App.1998).

Here, defendant was permitted to inquire about the circumstances surrounding the witness' misdemeanor conviction for giving false information to the police, but the court refused to allow defendant to inquire about the actual conviction because it was a misdemeanor. We perceive no abuse of discretion in that ruling.

Judgment affirmed.

Judge METZGER and Judge PLANK concur.