24CA1310 Peo in Interest of DP 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1310
Weld County District Court No. 23JV120
Honorable Anita Crowther, Judge

The People of the State of Colorado,

Appellee,

In the Interest of D.P. and K.P., Children,

and Concerning O.P.,

Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County
Attorney, Greeley, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado,
for Appellant

¶ 1    O.P. (father) appeals the judgment adjudicating D.P. and K.P. (the children) dependent and neglected.  We affirm.

## I.    Background

¶ 2    In September 2023, the Weld County Department of Human Services (Department) received a referral with concerns about substance use and domestic violence in the home.  A caseworker contacted mother, who admitted to substance use and agreed to a safety plan in which she would reside with a family friend and be supervised when caring for the children.  The caseworker also contacted father, but he told the caseworker he was out of town and didn't intend to comply with the Department's requests.

¶ 3    Based on this information, the Department filed a petition in dependency and neglect and assumed temporary legal custody of the children.  Mother also filed for, and received, a civil protection order preventing father from coming within 100 yards of the family home; she then filed for divorce in a separate domestic relations case.  In the dependency and neglect proceeding, mother made a no-fault admission to the petition, and the juvenile court returned legal custody to her following a dispositional hearing.  Father denied the allegations and asked for a jury trial.

¶ 4     In May 2024, the juvenile court held a two-day jury trial for father's portion of the case.  Mother testified that, among other things, she and father used illegal substances in the home; father threatened violence against her on multiple occasions; and on one occasion, he spit in her face, grabbed her by the throat, and threw her against the bed.  Father denied any recent drug use or acts of domestic violence and claimed that mother had fabricated these allegations for the domestic relations case.

¶ 5     The jury determined that the Department had met its burden to establish that the children were dependent and neglected under section 19-3-102, C.R.S. 2024.  Specifically, the jury found that the children were dependent and neglected because

- they lacked proper parental care through the actions or omissions of father, *see* § 19-3-102(1)(b);

- their environment was injurious to their welfare, *see* § 19-3-102(1)(c); and

- they were homeless, without proper care, or not domiciled with a parent through no fault of father, *see* § 19-3-102(1)(e).

Based on the jury's verdicts, the court sustained the petition, entered an order of adjudication, and adopted a treatment plan for father following a dispositional hearing.

## II.     Mistrial

¶ 6     Father contends that the juvenile court erred by denying his request for a mistrial.  We disagree.

### A.     Standard of Review

¶ 7     We review a juvenile court's decision to deny a motion for a mistrial for an abuse of discretion.  *See People v. Marko*, 2015 COA 139, ¶ 29, *aff'd*, 2018 CO 97.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.  A mistrial is a drastic remedy, which is warranted only when the prejudice to a party is so substantial that its effect on the jury cannot be remedied by any other means.  *People v. Griffin*, 985 P.2d 15, 21 (Colo. App. 1998).

### B.     Additional Background

¶ 8     During the Department's rebuttal closing argument at trial, the county attorney stated that she'd been "distracted briefly by a dispute that was occurring behind the podium."  The juvenile court

asked counsel to approach the bench, and the court stated that it did not "see anything" or "know what happened" and "doubt[ed] that the jury did." The county attorney told the court that father had been "harassing" her co-counsel. Although father's counsel "didn't see what had occurred," he still believed that the county attorney's comment cast "undue attention" on the incident and requested a mistrial. The court denied the request but prohibited the county attorney from further mentioning the incident.

¶ 9 After the jury retired to deliberate, the juvenile court made additional inquiries and findings about the incident. The court reiterated that it hadn't seen anything occur between father and the county attorney but did see a deputy sheriff standing near the parties. The county attorney involved in the incident stated that father told her that her typing was "very distracting," so she advised him to "scoot over to the next seat." The county attorney said that, instead of moving seats, father "started arguing" with her, so she "asked law enforcement to come up to stand between" them to "de-escalate" the situation.

¶ 10 Father's counsel then clarified that the incident occurred during his closing argument, and he only "hear[d] some shuffling"

4

but didn't see what happened because he was "trying to make eye contact" with the jurors. Counsel said he couldn't be sure "what the jury saw," considering that "the podium ha[d] probably blocked some of it." Nevertheless, father's counsel renewed the request for a mistrial, arguing that the Department's "whole case" was premised on the idea that father was an "unreasonable monster" and "there's been undue and unnecessary and inappropriate attention brought to" the incident.

¶ 11 The Department and the guardian ad litem (GAL) opposed a mistrial. The county attorney asserted that her comment didn't prejudice father because she "didn't draw attention to what the dispute was" or "who was involved in the dispute," only that there was a dispute of some sort. The GAL asserted that father wasn't entitled to a mistrial because the jury could "use their common sense" to "decide what they believe occurred."

¶ 12 The juvenile court determined that, although the situation "could have been handled better" by the parties, the dispute and the county attorney's brief comment about it didn't warrant a mistrial. As a result, the court again denied the request for a mistrial.

## C. Analysis

¶ 13  We discern no reversible error resulting from the juvenile court's decision to deny father's request for a mistrial for four reasons. *See People v. Helms*, 2016 COA 90, ¶ 59 (An appellate court "will not disturb the district court's decision [denying a motion for a mistrial] absent a showing of a gross abuse of [its] discretion and prejudice to the moving party.").

¶ 14  First, the record shows that it was unlikely the jury saw or heard the incident. Specifically, the record indicates that neither the juvenile court, nor father's counsel, saw what happened, and father's counsel admitted that the jury might not have seen anything because the podium blocked their view. *See People v. Thatcher*, 638 P.2d 760, 769 (Colo. 1981) (affirming the trial court's decision to deny a mistrial where the jury likely didn't notice the victim's husband's acts during closing argument), *superseded by rule on other grounds as stated in People v. Dist. Ct.*, 790 P.2d 332 (Colo. 1990). But to the extent that the jury may have seen what happened, the record shows that father initiated the incident by arguing with the county attorney. *See People v. Burke*, 937 P.2d

886, 889 (Colo. App. 1996) (A party "may not by his own conduct force a declaration of mistrial.").

¶ 15    Second, we disagree with father's contention that he was entitled to a mistrial because the county attorney improperly drew the jury's attention to the incident. True, the county attorney briefly mentioned the "dispute" in her rebuttal argument, but the juvenile court quickly stopped the argument and prevented the county attorney from further commenting about what happened. *See People v. Rhea,* 2014 COA 60, ¶ 68 (the defendant wasn't entitled to a new trial where the prosecutor's improper comment was an "isolated" event). And as noted, the county attorney never described the nature of the dispute or said that it involved father. Therefore, considering the very brief and limited nature of the comment, coupled with the lack of evidence that the jurors saw anything, we discern no reversible error on this basis.

¶ 16    Third, we are not convinced that father was entitled to a mistrial based on the deputy "st[anding] directly beside him, exhibiting an unnecessary show of force in full view of the jury." In so arguing, father relies on criminal cases involving the jury's exposure to a criminal defendant being escorted by police during a

trial, which, in limited circumstances, may be grounds for a mistrial. *See People v. Garcia*, 17 P.3d 820, 827 (Colo. App. 2000). But father hasn't directed us to any authority — and we aren't aware of any — that would require a mistrial under the same circumstances in a civil proceeding, such as a dependency and neglect proceeding. *See People in Interest of K.N.B.E.*, 2019 COA 157, ¶ 13 (parties to a dependency and neglect proceeding are not "entitled to the same due process rights as a defendant in a criminal proceeding"). In any event, nothing in the record suggests that the deputy escorted father anywhere, and father hasn't explained why *Garcia* isn't distinguishable on that ground. We therefore reject father's assertion.

¶ 17    Finally, we conclude that the juvenile court didn't abuse its discretion by not (1) instructing the jury to disregard the incident or (2) polling the jurors to determine whether they were affected by the incident. Father didn't ask the court for either remedy. And based on the record before us, we disagree that the court should've acted sua sponte. Indeed, such remedies may have had the effect of calling unnoticed acts to the jury's attention. *See Thatcher*, 638 P.2d at 769 (the trial court didn't abuse its discretion by declining

to provide a jury instruction when it didn't appear that the jury had noticed the challenged conduct); *People v. Horton*, 683 P.2d 358, 361 (Colo. App. 1984) (rejecting, for similar reasons, an assertion that the court erred by failing to poll the jury).

### III.  Expert Opinion on an Ultimate Issue

¶ 18    Father also contends that the juvenile court erred by allowing the intake caseworker to testify that the evidence was sufficient to satisfy the legal criteria for adjudication, thereby usurping the jury's function.  We reject father's contention because he (1) didn't preserve it for appeal and (2) isn't entitled to relief under the miscarriage of justice exception to the preservation rule.  However, even if father's contention is properly before us, we still reject it.

### A.    Preservation

¶ 19    In dependency and neglect proceedings, appellate courts don't consider issues that weren't preserved in the trial court — such as challenges to the admission of evidence that weren't timely made at trial.  *See People in Interest of M.B.,* 2020 COA 13, ¶ 14.  To preserve an issue for appeal, a party must present the court with "an adequate opportunity to make findings of fact and conclusions

of law on [the] issue." *Forgette v. People*, 2023 CO 4, ¶ 21 (quoting *People v. Melendez,* 102 P.3d 315, 322 (Colo. 2004)).

¶ 20    Father's contention is based on the intake caseworker's testimony that she received information indicating that the children lacked proper parental care and were in an injurious environment. Father didn't object to this evidence.  That said, his counsel did object to the county attorney's question about whether the intake caseworker "believe[d] that the[] children [were] dependent and neglected," and the juvenile court sustained that objection because "[t]hat's for the jury to decide."

¶ 21    Consequently, although father raised an objection on the same grounds he raises on appeal, he didn't object to the specific evidence that he is now challenging.  In other words, he didn't preserve his appellate contention.  *See Martinez v. People*, 2015 CO 16, ¶ 14 (an objection must be "specific enough to draw the trial court's attention to the asserted error").

### B.    Miscarriage of Justice Exception

¶ 22    Nevertheless, father contends that we should address his unpreserved assertion under the miscarriage of justice exception to the preservation rule.  In "limited situations," the miscarriage of

10

justice exception allows an appellate court to reach an issue raised for the first time on appeal to avoid a miscarriage of justice. *People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). The exception has been applied in very few dependency and neglect cases. *See People in Interest of T.W.*, 2022 COA 88M, ¶ 24; *People in Interest of E.S.*, 2021 COA 79, ¶ 14; *A.E.*, 914 P.2d at 539. *But see People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21 n.1 (declining to apply the miscarriage of justice exception).

¶ 23    We are not persuaded by father's vague invocation of the miscarriage of justice exception. In father's opinion, the miscarriage of justice exception should apply to his unpreserved argument because he "had a fundamental liberty interest in parenting his children" and a "fundamental right to a fair trial by an impartial jury." But parents involved in dependency and neglect cases *always* have a fundamental liberty interest in parenting their children and the right to an impartial jury (if their case is heard by a jury). Therefore, under father's interpretation, *every* putative error in a dependency and neglect case would be subject to appellate review regardless of preservation. That cannot be the case

11

because it would render meaningless both the preservation requirement and the miscarriage of justice exception.

### C. Analysis

¶ 24    Even assuming, without deciding, that father's argument is properly before us, we still reject it.

¶ 25    We review a juvenile court's admission of expert testimony for an abuse of discretion. *People in Interest of S.L.*, 2017 COA 160, ¶ 68.

¶ 26    Under CRE 704, opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the jury. *People in Interest of J.R.*, 2021 COA 81, ¶ 21.  But an expert witness cannot tell the jury what result to reach or form conclusions for jurors that they are competent to reach on their own. *People v. Baker*, 2019 COA 165, ¶ 14, *aff'd*, 2021 CO 29.  In determining whether expert testimony usurped the jury's function, we consider several factors, including whether the expert's testimony expressed an opinion on the applicable law or legal standards and whether the jury was properly instructed that it may accept or reject the expert's opinion. *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011); *see also J.R.*, ¶ 30.

¶ 27 In our view, the caseworker didn't express a legal opinion about whether the criteria in section 19-3-102 were satisfied. *See Rector*, 248 P.3d at 1203; *see also People v. McMinn*, 2013 COA 94, ¶ 55 (the court didn't abuse its discretion in allowing a witness to use language that tracked one of the elements of the crime). And because the juvenile court sustained father's objection as described above, the caseworker never opined that the children were dependent and neglected. *See J.R.*, ¶ 30 (an expert witness cannot opine that a criminal defendant committed the crime). Finally, the court properly instructed the jury on the law and the jury's ability to accept or reject expert testimony. *See Rector*, 248 P.3d at 1203.

¶ 28 In sum, the juvenile court didn't abuse its discretion by allowing the intake caseworker to answer the county attorney's questions about proper parental care and injurious environment.

IV. Father's Refusal to Cooperate with the Department

¶ 29 Next, father contends that the juvenile court erred by admitting evidence of his refusal to cooperate with the Department. We discern no reversible error.

## A. Applicable Law and Standard of Review

¶ 30     Before an adjudication, "parents may voluntarily work with the department to alleviate any child welfare concerns." *People in Interest of G.E.S.*, 2016 COA 183, ¶ 14. But "a parent need not cooperate with the department's efforts to investigate the factual allegations supporting the petition" because "it is the department's burden to prove, by a preponderance of the evidence, the petition's allegations." *Id.* Still, evidence of a parent's refusal to cooperate with the department may be admissible under some circumstances. *See People in Interest of M.H-K.*, 2018 COA 178, ¶ 69 n.5 (after the magistrate entered an order requiring a father to submit to drug testing, his refusal to comply was relevant and the jury could infer that he refused because "the results would have been detrimental to his interests").

¶ 31     "A person's refusal to perform a particular act has probative value only if the person has a duty to perform the act or it would have otherwise 'been natural under the circumstances' for the person to take the action." *Id.* at ¶ 68 (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)). "[W]hen the refusal to perform the act is objectively unreasonable, the jury can reasonably infer that

14

the person has refused to perform the act because performance would be detrimental to his or her interests." *Id.* at ¶ 69. "But when the refusal to perform the act may be attributable to a variety of innocent circumstances that are completely unrelated to the inferred conclusion the proponent seeks to educe, the fact of refusal is too ambiguous to be relevant and is therefore inadmissible." *Id.* at ¶ 70.

¶ 32    We review the juvenile court's evidentiary rulings for an abuse of discretion. *Id.* at ¶ 60.

¶ 33    An error in admitting evidence is harmless when it doesn't affect the substantial rights of the parties. C.R.C.P. 61; CRE 103(a). An error affects the substantial rights of a party only when it can be said with fair assurance that the error substantially influenced the case's outcome or impaired the basic fairness of the trial itself. *People in Interest of C.C.*, 2022 COA 81, ¶ 20. In assessing whether an error is harmless, we consider "the importance of the evidence to the proponent's case, whether the evidence was cumulative, the presence of other evidence corroborating or contradicting the point for which the evidence was offered, and the overall strength of the proponent's case." *People in Interest of M.V.*, 2018 COA 163, ¶ 67,

*overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

## B. Analysis

¶ 34    To begin, father directs our attention to allegedly improper comments the county attorney uttered in her opening statement. Specifically, the county attorney stated that father wasn't interested in engaging with the Department and wouldn't participate in treatment without a warrant. However, father didn't object to these statements. *See M.B.*, ¶ 14. At any rate, we discern no reversible error because the juvenile court instructed the jury, at the outset of trial and before its deliberations, that opening statements are not evidence and that it could only consider evidence presented at trial. *See Brooktree Vill. Homeowners Ass'n v. Brooktree Vill., LLC*, 2020 COA 165, ¶ 108 (if the court gives an instruction that an opening statement isn't evidence, it is presumed, absent a contrary showing, that the jury understood the instruction and followed it).

¶ 35    Next, father asserts that the juvenile court erred by admitting the intake caseworker's testimony about father's noncooperation. He points to two portions of the intake caseworker's testimony, but his counsel only objected to one question on the grounds that he

16

now raises on appeal. *See People v. Ujaama*, 2012 COA 36, ¶ 37 (an issue is unpreserved if a party objects but on grounds different from those raised on appeal). The GAL asked whether father complied with the Department's attempts to verify whether he was using substances, to which the caseworker said he did not. Because the court entered temporary orders requiring father to comply with drug testing, evidence of his failure to comply with such testing was admissible. *See M.H-K.*, ¶ 69 n.5. But even assuming that the evidence was inadmissible, we conclude that any error was harmless because other competent evidence established that father was using drugs. *See M.V.*, ¶ 67.

¶ 36    Father also asserts that the juvenile court erred by failing to exclude the ongoing caseworker's testimony that father didn't comply with monitored sobriety or treatment. Father didn't object to this testimony and, thus, the objection isn't preserved. *See M.B.*, ¶ 14. In any event, to the extent that father now objects to the testimony concerning his failure to comply with monitored sobriety, we reject his argument for the same reasons addressed above — he was subject to temporary orders requiring drug testing, making his lack of compliance admissible, and any error was harmless given

the other evidence that he was using drugs. *See M.H-K.*, ¶ 69 n.5; *M.V.*, ¶ 67. And while father wasn't required to engage in treatment under the temporary orders, any putative error related to the ongoing caseworker's brief mention of whether father agreed to treatment was harmless. *See M.V.*, ¶ 67.

¶ 37 Finally, father asserts that the juvenile court erred in failing to instruct the jury that father had no duty to cooperate with the Department and that there is a presumption that fit parents act in the best interests of their children. *See G.E.S.*, ¶ 14; *People in Interest of J.G.*, 2021 COA 47, ¶ 20. But father didn't ask for such an instruction. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 20 (a party can preserve an alleged instructional error for appeal by tendering a proposed jury instruction). And considering that the model jury instructions don't include one, we aren't convinced that the court abused its discretion by not creating one sua sponte. *See generally Evans v. People*, 706 P.2d 795, 800 (Colo. 1985) ("[A] trial court's use of an excerpt from an opinion in an instruction is generally an unwise practice.").

## V.    Dismissal

¶ 38    Father also contends that the juvenile court should've dismissed the case before the adjudicatory hearing, based on his motion for directed verdict or because the evidence presented at the hearing was insufficient.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 39    "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship."  *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989).

¶ 40    As relevant here, a child is dependent and neglected if (1) the child "lacks proper parental care through the actions or omissions" of a parent; (2) the child's "environment is injurious to his or her welfare"; or (3) the child is "homeless, without proper care, or not domiciled with his or her parent . . . through no fault of [the] parent." § 19-3-102(1)(b)-(c), (e).  A child is in an injurious environment when the child is in a situation that is likely harmful

19

to the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 26. Proper parental care means the minimum level of care or services and necessities that are required to prevent any serious threat to the child's health or welfare. *People in Interest of S.X.M.*, 271 P.3d 1124, 1131-32 (Colo. App. 2011); *see also* CJI-Civ. 41:7 (2024).

¶ 41　　An adjudication of dependency and neglect must be based on existing circumstances and must relate to the child's status at the time of adjudication. *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008). But that doesn't mean that a factfinder must find the child is receiving improper care at the time of the hearing. *S.X.M.*, 271 P.3d at 1130. Instead, an adjudication may be based on current, past, or prospective harm. *See G.E.S.*, ¶ 15.

¶ 42　　In considering prospective harm, the factfinder's task is to determine whether the child will lack proper parental care or the child's environment will be injurious to the child if returned to the parent. *S.X.M.*, 271 P.3d at 1130. Thus, a factfinder may consider whether it is likely or expected that a child will be dependent and neglected if returned to the parent. *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16. Such a determination may be based on the "parent's past conduct and current circumstances." *Id.* at ¶ 17.

¶ 43    Whether a child is dependent and neglected presents a mixed question of fact and law because it requires the application of evidentiary facts to statutory grounds. *People in Interest of M.M.*, 2017 COA 144, ¶ 17. When determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the factfinder's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). We won't disturb the factfinder's verdict if the record supports it, even if reasonable people could arrive at different conclusions based on the same facts. *Id.*

## B.    Analysis

¶ 44    Father first asserts that the juvenile court should've dismissed the case before the adjudicatory hearing because mother had completed her treatment plan. Father acknowledges that he never asked the court to dismiss the case for this reason, *see M.B.*, ¶ 14, and again asks us to apply the miscarriage of justice exception to reach his unpreserved argument, *see S.Z.S.*, ¶ 29 n.1. We are not convinced, but regardless we discern no error. Although the record indicates that mother had complied with many aspects of her

21

treatment plan, it doesn't show that mother had completed her treatment plan and was a fit parent. Rather, the record shows that, although mother had made some progress, the Department believed she still needed to continue to participate in monitored sobriety, provide a safe living environment for the children, and stay in contact with her caseworker.

¶ 45    Father also contends that the juvenile court erred by denying his motion for a directed verdict. *See* C.R.C.P. 50 (describing the requirements for a motion for directed verdict). He asserts that the children couldn't lack proper care or be in an injurious environment if returned to his care because they couldn't have returned to his care. Specifically, he notes that, because mother had a restraining order against him and had filed a domestic relations case, even if this case was dismissed, the children wouldn't be able to return to his care. We reject his assertion.

¶ 46    To start, although father moved for a directed verdict, he did so for different reasons than those he now asserts. *See Flores v. Am. Pharm. Servs., Inc.*, 994 P.2d 455, 459 (Colo. App. 1999) (declining to address issues that "were not presented to the trial court as bases for the motion for a directed verdict"); *see also*

C.R.C.P. 50 ("A motion for a directed verdict shall state the specific grounds therefor."). However, assuming, without deciding, that father's assertion can be construed as a challenge to the sufficiency of the evidence (and therefore not subject to the preservation rule, *see generally McCoy v. People*, 2019 CO 44, ¶ 27), we still reject it.

¶ 47 Contrary to father's assertion, the record doesn't show that the children could not be returned to his care. Although mother received a protection order against father, the protection order didn't include the children. And while the record indicates that mother asked the domestic court for custody of the children, it is mere speculation that she would achieve those requests. In other words, if the dependency and neglect case closed, there would be no court order preventing father from caring for the children. His assertion therefore fails.

¶ 48 What's more, father's argument assumes that the children wouldn't be dependent and neglected in mother's care. As noted, although the record indicates that mother had made progress on her sobriety, it also indicates that the Department still believed additional monitoring and contact with the caseworker were warranted. So even if the children couldn't be returned to father's

care as he maintains, the evidence was still sufficient for the jury to find that the children would be dependent and neglected in mother's care. *See M.M.*, ¶ 26 (summary judgment was appropriate under section 19-3-102(1)(c) and (e) based on the father's admissions that the mother wasn't properly caring for the children and that the children were in an injurious environment in her care).

¶ 49 Viewing the evidence in the light most favorable to the Department and drawing every fairly deducible inference in favor of the jury's decision, we conclude that the record contains sufficient evidence to support the jury's determination. *See S.G.L.*, 214 P.3d at 583.

¶ 50 Finally, father argues that the juvenile court erred by instructing the jury that it could find the children were dependent and neglected, even if father didn't have custody of the children, if it found that the children would lack proper parental care if returned to father's care. *See* CJI-Civ 41:12 (2024); *see also S.X.M.*, 271 P.3d at 1129 (a juvenile court's decision to give a particular instruction is reviewed for an abuse of discretion). He asserts that this jury instruction was improper because the children couldn't be returned

to his care if the case was dismissed.  We reject this assertion for the same reasons explained above.

## VI.    Ineffective Assistance of Counsel

¶ 51    As his final argument, father contends that his counsel failed to provide him with effective assistance of counsel.  We discern no basis for a remand.

### A.    Applicable Law and Standard of Review

¶ 52    A parent has a statutory right to counsel in a dependency and neglect proceeding.  § 19-3-202(1), C.R.S. 2024.  A parent's statutory right to counsel includes the right to the effective assistance of counsel.  *See A.R. v. D.R.,* 2020 CO 10, ¶ 47.

¶ 53    We employ the same test that we use to evaluate an ineffective assistance of counsel claim in a criminal case.  *See id.* at ¶¶ 48, 60. Under this test, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would've been different.  *Id.*  "If the parent fails to establish either

prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 54 Under this test, an appellate court must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. However, if the parent's allegations lack sufficient specificity, the appellate court may summarily deny the ineffective assistance claim. *Id.*

### B. Analysis

¶ 55 We have already addressed and rejected several of the underlying claims that father asserts his counsel should've raised. These include claims that counsel failed to (1) ask for a limiting instruction about the incident between him and the county attorney described in Part II above; (2) request that the juvenile court poll the jury about that same incident; (3) object to the intake caseworker's testimony discussed in Part III above; and (4) move the court to dismiss the case when mother "completed" her treatment plan as noted in Part IV above. Because we rejected the underlying claims, father cannot establish the prejudice prong. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007) (because a division of

this court determined that the failure to give a limiting instruction was harmless on direct appeal, the defendant couldn't establish that he was prejudiced by counsel's error).

¶ 56 Father next asserts that his counsel was ineffective for failing to "cite to appropriate law where necessary." But he provides no specific examples, nor does he explain in any detail how counsel's alleged deficient performance prejudiced him. Thus, this claim lacks sufficient specificity. *See A.R.*, ¶ 63.

¶ 57 Finally, father asserts that his counsel was ineffective for failing to object to an improper statement made during closing argument. We need not consider whether counsel's failure to object to this statement amounted to deficient performance because father hasn't alleged prejudice. Rather, he asserts that the allegedly improper statement was "prejudicial in and of itself." In other words, father asserts that we should merely presume prejudice. But the "presumption of prejudice applies only in relatively narrow circumstances," none of which are present here. *See id.* at ¶ 66 (these circumstances include, for example, when counsel was (1) not made available; (2) prohibited from participating in a critical aspect of the proceeding; or (3) acting under a conflict of interest).

¶ 58     In sum, we conclude that father hasn't raised sufficiently specific and compelling allegations to constitute a prima facie showing of ineffective assistance of counsel.  *See id.* at ¶ 63; *see also People v. Sherman*, 172 P.3d 911, 914 (Colo. App. 2006) (a claim that is too speculative won't satisfy the prejudice prong). Thus, we discern no basis to remand the matter to the juvenile court for an evidentiary hearing.

## VII.   Disposition

¶ 59     The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.